UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Carmen Nieves, individually and on behalf of all others similarly situated,<br><br>                       Plaintiff,<br><br>                - against -<br><br>The Procter & Gamble Company,<br><br>                       Defendant | 7:21-cv-00186-CS<br><br><br>First Amended Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1. The Procter & Gamble Company ("defendant") manufactures, markets, labels and sells toothpaste represented as being for GUM & ENAMEL REPAIR, under the Crest brand ("Product").

2. This representation leads reasonable consumers to believe that the Product will "repair" their gums as well as their enamel.

3. This is false.

## I. PERIODONTAL DISEASES

4. Gum diseases, called periodontal diseases, "are mainly the result of infections and inflammation of the gums and bone that surround and support the teeth."

5. When someone has periodontal disease, the gum tissue pulls away from the tooth.

6. As the disease worsens, the tissue and bone that support the tooth are destroyed.

7. Over time, teeth may fall out or need to be removed.

8. Periodontal diseases are caused by plaque, a sticky film that is always forming on teeth.

9. Plaque contains bacteria that produce harmful toxins.

10. If teeth are not cleaned well, the toxins can irritate and inflame the gums.

11. If plaque is not removed, it can cause gums (gingivae) to pull away from the teeth, forming pockets in which more bacteria can collect.

12. Plaque that is not removed hardens into tartar (calculus), along and under the gums.

13. "The pockets and hard calculus make it difficult to remove plaque without help from a dentist, and periodontal disease can develop."

14. "There are various stages to periodontal disease—from gingivitis (early stage) to periodontitis (advanced disease).

15. In the gingivitis stage, the gums can become swollen, red, and may bleed.

16. According to the American Dental Association ("ADA"), gingivitis may be reversed if caught early and no damage has been done to the supporting structures under the teeth.

17. As the ADA explains, the early-stage gingivitis reversal process involves "a professional cleaning" where the dentist uses a special tool to scrape the hardened calculus and plaque from along and beneath the gum line.

18. Defendant's website similarly explains that reversing gingivitis requires "the help of your dentist."

19. "Even with these measures, some patients develop more severe periodontal disease that must be treated" further and which may require multiple dental visits.

20. In this treatment, plaque and tartar are carefully removed down to the bottom of each periodontal pocket and the tooth's root surfaces are then smoothed to allow the gum tissue to heal and reattach to the tooth.

**II.   LIMITATIONS OF NON-INVASIVE OPTIONS TO REPAIR GUMS**

21.   While toothpaste ingredients and regular brushing can prevent gingivitis, they cannot repair gums.

22.   Receding gums do not grow back; once the gum tissue has pulled back and away from the teeth, it is gone for good.

23.   When gums recede, the roots of the teeth become exposed, making the teeth look longer, which changes the way the smile looks.

24.   At every stage of periodontal disease, professional treatment is needed to repair gums.

25.   Non-surgical options include gingival veneers, which are covers applied over the gum area.

26.   Surgical options include cosmetic surgery, such as gum grafting.[1]

**III.   WHY LABELING IS MISLEADING**

27.   The representation of "GUM & (AND) ENAMEL REPAIR" is false, deceptive and misleading because the Product can only help "control, reduce or prevent gingivitis, an early form of gum disease."[2]

---

[1] Periodontal Treatments and Procedures Perio.org; Shaddox, L. and Walker, C., Treating chronic periodontitis: current status, challenges, and future directions, Clin. Cosmet. Investig. Dent., v.2; Aug. 11, 2010, available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3645457/.

[2] Proposed Monograph, 21 C.F.R. Part 356 – Oral Health Care Drug Products For Over-The-Counter ("OTC") Human Use; 21 C.F.R. § 356.65 ("Labeling of antigingivitis/antiplaque drug products.").

 

28.  Though the statement of identity of the Products is "Fluoride Toothpaste for Anticavity and Antigingivitis," the most prominent statement is "Gum & Enamel Repair."

29.  Although the word "gum" does not directly precede "repair," its large typeface is similar to the word "enamel," and both words are modified by the word "repair," to which "gum" is tethered by proximity, and conjoined by the word "and," (or "&").

30.  Combined with the lack of any limiting language, reasonable consumers reading the Product label believe the Product will "repair" their gums when it will not.

31.  Reasonable consumers will expect the Product will repair structural damage such as gum recession, bone loss, or periodontal pocketing, in addition to the promise of "revers[ing] gingivitis."

32.  The Product's active ingredient – Stannous Fluoride .454% (.14% W/V Fluoride Ion)

4

– which is common to most toothpastes, provides no special gum "repair" benefits.

33. Stannous fluoride only "helps interfere with harmful effects of plaque associated with gingivitis."

34. When the FDA issued the proposed monograph for labeling of antigingivitis/antiplaque drug products, it did not refer to or address any indications for gum repair.

35. Instead, the proposed monograph states the indications of an antigingivitis product as helping to:

- "control" "reduce" or "prevent" gingivitis (for antigingivitis products);
- "interfere with harmful effects of plaque associated with gingivitis" (if the product contains stannous fluoride); or
- "control" "reduce" "prevent" or "remove" plaque that leads to gingivitis (for antigingivitis/antiplaque products).

36. The FDA cautioned sellers of oral care products against representations not specifically discussed in the proposed Monograph, since such statements could – and in this instance, do – mislead consumers.

37. Since both gums and enamel can be repaired, reasonable consumers – and especially the 3 out of 4 American adults with gingivitis – would naturally expect the Product to be capable of repairing gums.

38. Reasonable consumers cannot be expected to know that the Product will be unable to repair gums, or to have read the proposed monograph.

39. Repairing gums is materially different from controlling, reducing, and preventing gingivitis or removing plaque that leads to gingivitis.

40. Reasonable consumers must and do rely on a company to honestly identify and describe the components and features of the Product.

41. The value of the Product that plaintiff purchased was materially less than its value as represented by defendant.

42. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

43. Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

44. The Product is sold for a price premium compared to other similar products, no less than between $6.99 and $9.29, for 4.1 OZ, a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

## Jurisdiction and Venue

45. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

46. Upon information and belief, the aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

47. Plaintiff Carmen Nieves is a citizen of New York.

48. Defendant The Procter & Gamble Company is a Ohio corporation with a principal place of business in Cincinnati, Hamilton County, Ohio.

49. The parties are citizens of different states.

50. Venue is proper because plaintiff resides in this district and a substantial portion of the events giving rise to the claims occurred in this district.

## Parties

51. Plaintiff Carmen Nieves is a citizen of Scarsdale, Westchester County, New York.

52. Defendant The Procter & Gamble Company, is an Ohio corporation with a principal place of business in Cincinnati, Ohio, Hamilton County.

53. Defendant manufactures, labels, markets, distributes, and sells various consumer goods, and is one of the largest manufacturers of oral care products, under its Crest brand.

54. This lawsuit concerns one of those products – Crest Gum & Enamel Repair toothpaste.

55. The Product is sold at virtually every major food, drug, and mass retail outlet in the country, including, but not limited to CVS, Costco, Target, Walgreens, and Walmart.

56. Throughout the relevant time period, Defendant has consistently conveyed the deceptive gum repair message to consumers throughout New York via prominent front-label gum repair representations.

57. Each and every consumer who purchases the Product is exposed to the deceptive gum repair representation, which appeared prominently and conspicuously on the front of the Product during the Class Period.

58. Plaintiff bought the Product on one or more occasions within the statute of limitations for each cause of action alleged, at stores including Costco Wholesale Supermarket, 1 Stew Leonard Drive Yonkers NY 10710, between approximately December 4, 2020, and January 4, 2021.

59. Plaintiff was exposed to, read, and relied upon Defendant's gum repair representation on the Product label.

60. She purchased the Product in reliance on the gum repair representation, which led her to believe that the Product would "repair" her gums, and she paid no less than the above-

referenced price for the Product.

61. The Product Plaintiff purchased did not and could not provide the represented gum repair benefits.

62. Had Plaintiff known the truth about Defendant's misrepresentations, she would not have purchased the Product, or would not have paid as much for it.

63. As a result, Plaintiff suffered injury in fact and lost money at the time of purchase. Plaintiff continues to desire to purchase Crest toothpaste products that can support or improve the health of her gums and are not misleadingly labeled, and she would purchase such a product manufactured by Defendant if it were possible to determine prior to purchase the extent of the product's gum repair benefits.

64. Indeed, Plaintiff regularly visits stores such as Costco and other retailers, where Defendant's Crest toothpaste products are sold, but will be unable to rely upon the gum repair representations and will not be able to determine if the products, including the Product at issue in this case, are truthfully labeled when deciding whether to purchase such products in the future.

65. Plaintiff bought the Product at or exceeding the above-referenced price.

66. Plaintiff chose between Defendant's Product and other similar products which were represented similarly, but which did not misrepresent their attributes and/or lower-priced products which did not make the claims made by Defendant.

67. The Product was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

## Class Allegations

68. The class will consist of all New York residents who purchased the Product during the statutes of limitations for each cause of action alleged.

69. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

70. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

71. Plaintiff is an adequate representative because her interests do not conflict with other members.

72. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

73. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

74. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

75. Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>New York General Business Law ("GBL") §§ 349 & 350</u>

<u>(Consumer Protection Statute)</u>

76. Plaintiff incorporates by reference all preceding paragraphs.

77. Plaintiff and class members desired to purchase a toothpaste that could repair gums, as indicated on the label.

78. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

79. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

80. Plaintiff relied on the representations.

9

81. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Breaches of Express Warranty,
Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

82. The Product was manufactured, labeled and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it could repair gums, as indicated on the label.

83. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

84. This duty is based on Defendant's outsized role in the market for this type of Product.

85. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

86. Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices.

87. Specifically, another of Defendant's oral care brands, was cited by regulators in the United Kingdom for misleading claims related to these issues.

88. The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because they were not fit to pass in the trade as advertised.

89. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

90. Defendant had a duty to truthfully represent the Product, which it breached.

91. This duty is based on defendant's position, holding itself out as having special

knowledge and experience this area.

92. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant.

93. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

94. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Fraud

95. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that they could repair gums, as indicated on the label

96. Defendant knew, or should have known, that the claim to repair gums was false, deceptive, and misleading.

97. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

## Unjust Enrichment

98. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   July 16, 2021

                                                    Respectfully submitted,

                                                    Sheehan & Associates, P.C.
                                                    /s/Spencer Sheehan
                                                    60 Cuttermill Rd Ste 409
                                                    Great Neck NY 11021-3104
                                                    Tel: (516) 268-7080
                                                    Fax: (516) 234-7800
                                                    spencer@spencersheehan.com