## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Carmen Nieves, Wendy Keirsted, and Liza Lichtinger, individually and on behalf of all others similarly situated, | 7:21-cv-00186-CS<br>7:21-cv-05648-CS<br>7:21-cv-05646-CS |
| Plaintiff, | |
| - against - | **Consolidated Class Action Complaint** |
| The Procter & Gamble Company, | |
| Defendant | Jury Trial Demanded |

Plaintiffs Carmen Nieves, Wendy Keirsted, and Liza Lichtinger ("Plaintiffs") allege upon information and belief, except for allegations pertaining to Plaintiffs, which are based on personal knowledge:

1.    The Procter & Gamble Company ("Defendant") manufactures, markets, labels, and sells toothpaste represented as being for GUM & ENAMEL REPAIR, under the Crest brand (the "Product").

2.    This representation leads reasonable consumers to believe that the Product will "repair" their gums as well as their enamel.

3.    This is false.

## NATURE OF THE ACTION

### I.    PERIODONTAL DISEASES

4.    Gum diseases, called periodontal diseases, "are mainly the result of infections and inflammation of the gums and bone that surround and support the teeth."

5.    When someone has periodontal disease, the gum tissue pulls away from the tooth.

6.      As the disease worsens, the tissue and bone that support the tooth are destroyed.

7.      Over time, teeth may fall out or need to be removed.

8.      Periodontal diseases are caused by plaque, a sticky film that is always forming on teeth.

9.      Plaque contains bacteria that produce harmful toxins.

10.     If teeth are not cleaned well, the toxins can irritate and inflame the gums.

11.     If plaque is not removed, it can cause gums (gingivae) to pull away from the teeth, forming pockets in which more bacteria can collect.

12.     Plaque that is not removed hardens into tartar (calculus), along and under the gums.

13.     "The pockets and hard calculus make it difficult to remove plaque without help from a dentist, and periodontal disease can develop."

14.     "There are various stages to periodontal disease—from gingivitis (early stage) to periodontitis (advanced disease)."

15.     In the gingivitis stage, the gums can become swollen, red, and may bleed.

16.     According to the American Dental Association ("ADA"), gingivitis may be reversed if caught early and no damage has been done to the supporting structures under the teeth.

17.     As the ADA explains, the early-stage gingivitis reversal process involves "a professional cleaning" where the dentist uses a special tool to scrape the hardened calculus and plaque from along and beneath the gum line.

18.     Defendant's website similarly explains that reversing gingivitis requires "the help of your dentist."

19.     "Even with these measures, some patients develop more severe periodontal disease that must be treated" further and which may require multiple dental visits.

20.     In this treatment, plaque and tartar are carefully removed down to the bottom of each

periodontal pocket and the tooth's root surfaces are then smoothed to allow the gum tissue to heal and reattach to the tooth.

## II.    LIMITATIONS OF NON-INVASIVE OPTIONS TO REPAIR GUMS

21.    While toothpaste ingredients and regular brushing can prevent gingivitis, they cannot repair gums.

22.    Receding gums do not grow back; once the gum tissue has pulled back and away from the teeth, it is gone for good.

23.    When gums recede, the roots of the teeth become exposed, making the teeth look longer, which changes the way the smile looks.

24.    At every stage of periodontal disease, professional treatment is needed to repair gums.

25.    Non-surgical options include gingival veneers, which are covers applied over the gum area.

26.    Surgical options include cosmetic surgery, such as gum grafting.[1]

## III.    WHY THE PRODUCT LABELING IS MISLEADING

27.    The representation of "GUM & (AND) ENAMEL REPAIR" is false, deceptive, and misleading because the Product can only help "control, reduce or prevent gingivitis, an early form of gum disease.'"[2]

---

[1] Periodontal Treatments and Procedures Perio.org; Shaddox, L. and Walker, C., Treating chronic periodontitis: current status, challenges, and future directions, Clin. Cosmet. Investig. Dent., v.2; Aug. 11, 2010, *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3645457/.
[2] Proposed Monograph, 21 C.F.R. Part 356 – Oral Health Care Drug Products For Over-The-Counter ("OTC") Human Use; 21 C.F.R. § 356.65 ("Labeling of antigingivitis/antiplaque drug products.").




28.    Though the Product's statement of identity is "Fluoride Toothpaste for Anticavity and Antigingivitis," the most prominent statement is "Gum & Enamel Repair."

29.    Although the word "gum" does not directly precede "repair," its large typeface is similar to the word "enamel," and both words are modified by the word "repair," to which "gum" is tethered by proximity, and conjoined by the word "and" (or "&").

30.    Combined with the lack of any limiting language, reasonable consumers reading the Product label believe the Product will "repair" their gums when it will not.   Otherwise, without the word "repair" applying to "gum", reasonable consumers reading the Product label would have no understanding of what "gum" left standing alone means.

31.    Reasonable consumers expect the Product will repair structural damage such as gum recession, bone loss, or periodontal pocketing, in addition to the promise of "revers[ing]

gingivitis."

32.    The Product's active ingredient – Stannous Fluoride .454% (.14% W/V Fluoride Ion) –
which is common to most toothpastes, provides no special gum "repair" benefits.

33.    Stannous fluoride only "helps interfere with harmful effects of plaque associated with
gingivitis."

34.    When the FDA issued the proposed monograph for labeling of antigingivitis/antiplaque
drug products, it did not refer to or address any indications for gum repair or about
"revers[ing]" gingivitis.

35.    Instead, the proposed monograph states the indications of an antigingivitis product as
helping to:

- "control" "reduce" or "prevent" gingivitis (for antigingivitis products);

- "interfere with harmful effects of plaque associated with gingivitis" (if the product
contains stannous fluoride); or

- "control" "reduce" "prevent" or "remove" plaque that leads to gingivitis (for
antigingivitis/antiplaque products).

36.    The FDA cautioned sellers of oral care products against representations not specifically
discussed in the proposed Monograph, because such statements could – and in this instance,
do – mislead consumers.

37.    Because both gums and enamel can be repaired, reasonable consumers – and especially the
3 out of 4 American adults with gingivitis – would naturally expect the Product to be
capable of repairing gums.

38.    Reasonable consumers cannot be expected to know that the Product will be unable to repair
gums, or to have read the proposed monograph.

39.    Repairing gums is materially different from controlling, reducing, and preventing gingivitis or removing plaque that leads to gingivitis.

40.    Reasonable consumers must and do rely on a company to honestly identify and describe the components and features of its product.

41.    The value of the Product that Plaintiffs purchased was materially less than its value as represented by Defendant.

42.    Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

43.    Had Plaintiffs and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

44.    The Product is sold for a price premium compared to other similar products, no less than between $6.99 and $9.29, for a 4.1 OZ, a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

## JURISDICTION AND VENUE

45.    Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

46.    Upon information and belief, the aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

47.    Plaintiff Carmen Nieves is a citizen of New York.

48.    Plaintiff Wendy Keirsted is a citizen of Florida.

49.    Plaintiff Liza Lichtinger is a citizen of California.

50.    Defendant The Procter & Gamble Company is an Ohio corporation with a principal place of business in Cincinnati, Hamilton County, Ohio.

51.    The parties are citizens of different states.

52.    Venue is proper because Plaintiff Carmen Nieves resides in this district and a substantial portion of the events giving rise to the claims occurred in this district.

## PARTIES

53.    Plaintiff Carmen Nieves is a citizen of Scarsdale, Westchester County, New York.

54.    Plaintiff Wendy Keirsted is a citizen of West Palm Beach, Palm Beach County, Florida.

55.    Plaintiff Liza Lichtinger is a citizen of San Francisco, San Francisco County, California.

56.    Defendant The Procter & Gamble Company, is an Ohio corporation with a principal place of business in Cincinnati, Ohio, Hamilton County.

57.    Defendant manufactures, labels, markets, distributes, and sells various consumer goods, and is one of the largest manufacturers of oral care products, under its Crest brand.

58.    This lawsuit concerns one of those products – Crest Gum & Enamel Repair toothpaste.

59.    The Product is sold at virtually every major food, drug, and mass retail outlet in the country, including, but not limited to CVS, Costco, Target, Walgreens, and Walmart.

60.    Throughout the relevant time period, Defendant has consistently conveyed the deceptive gum repair message to consumers throughout New York, Florida, and California via prominent front-label gum repair representations.

61.    Each and every consumer who purchases the Product is exposed to the deceptive gum repair representation, which appeared prominently and conspicuously on the front of the Product during the Class Period.

62.    Plaintiffs bought the Product on one or more occasions within the statute of limitations for each cause of action alleged, at retail stores in Scarsdale, New York; West Palm Beach, Florida; and San Francisco, California.

63.   Plaintiffs were exposed to, read, and relied upon Defendant's gum repair and "reverse" gingivitis representations on the Product label.

64.   Plaintiffs purchased the Product in reliance on the gum repair and "reverse" gingivitis representations, which led Plaintiffs to believe that the Product would "repair" their gums, and Plaintiffs paid no less than the above-referenced price for the Product.

65.   The Product Plaintiffs purchased did not and could not provide the represented gum repair and "reverse" gingivitis benefits.

66.   Had Plaintiffs known the truth about Defendant's misrepresentations, they would not have purchased the Product, or would not have paid as much for it.

67.   As a result, Plaintiffs suffered injury in fact and lost money at the time of purchase. Plaintiffs continue to desire to purchase Crest toothpaste products that can support or improve the health of their gums and are not misleadingly labeled, and they would purchase such a product manufactured by Defendant if it were possible to determine prior to purchase the extent of the product's gum benefits.

68.   Indeed, Plaintiffs regularly visit retailers where Defendant's Crest toothpaste products are sold but will not be able to determine if the products, including the Product at issue in this case, are truthfully labeled when deciding whether to purchase such products in the future.

69.   Plaintiffs bought the Product at or exceeding the above-referenced price.

70.   Plaintiffs chose between Defendant's Product and other similar products, but which did not misrepresent their attributes and/or lower-priced products which did not make the claims made by Defendant.

71.   The Product was worth less than what Plaintiffs paid and they would not have paid as much absent Defendant's false and misleading statements and omissions.

## CLASS ALLEGATIONS

72.   The class will consist of three subclasses: New York, Florida, and California. Class members will be all persons in New York, Florida, and California who, from the beginning of the applicable limitations period through the date of trial, purchased one or more of Defendant's Products for personal use and not for resale.

73.   Excluded from the class are Defendant; any parent, subsidiary, or affiliate of Defendant; any entity in which Defendant has a controlling interest; and the respective officers, directors, employees, agents, legal representatives, heirs, predecessors, successors, and assigns of such excluded persons or entities.

74.   Plaintiffs reserve the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate sub-classes, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

75.   Common questions of law or fact predominate and include whether Defendant's representations were and are misleading and if Plaintiffs and class members are entitled to damages.  Questions of law and fact common to Plaintiff and the Class include, but are not limited to, the following:

      **a**. whether Defendant owed a duty of care to Plaintiffs and the Class;

      **b**. whether Defendant knew or should have known that the Product could be ineffective;

      **c**. whether Defendant wrongfully represented and continues to represent that the Product is effective;

**d**. whether Defendant's representations in advertising, warranties, packaging, and/or labeling are false, deceptive, and/or misleading;

**e**. whether the alleged omissions and misrepresentations are likely to deceive a reasonable consumer;

**f**. whether Defendant had knowledge that those alleged omissions or misrepresentations were false, deceptive, and/or misleading;

**g**. whether Defendant continues to disseminate those alleged omissions and misrepresentations despite knowledge that the representations are false, deceptive, and/or misleading;

**h**. whether Defendant's alleged omissions or misrepresentations and descriptions on the Product labeling are likely to mislead, deceive, confuse, and/or confound consumers acting reasonably;

**i**. whether Defendant engaged in unfair trade practices;

**j**. whether Defendant engaged in false advertising;

**k**. whether Defendant's conduct was negligent per se;

**l**. whether Plaintiffs and the members of the class are entitled to actual, statutory, and/or punitive damages; and

**m**. whether Plaintiffs and members of the class are entitled to declaratory and injunctive relief.

76.     Plaintiffs' claims and basis for relief are typical to other class members because all were subjected to the same unfair and deceptive representations and actions.

77.     Plaintiffs are adequate representatives because their interests do not conflict with other class members.

78.     No individual inquiry is necessary because the focus is only on Defendant's practices and

the class is definable and ascertainable.

79.    Individual actions would risk inconsistent results, be repetitive, and are impractical to justify, as the claims are modest relative to the scope of the harm.

80.    Plaintiffs' counsel are competent and experienced in complex class action litigation and intend to protect class members' interests adequately and fairly.

81.    Plaintiffs seeks class-wide injunctive relief because the practices continue.

## COUNT I

**New York General Business Law ("GBL") §§ 349 & 350**
**(New York Consumer Protection Statute**
**for New York subclass)**

82.    Plaintiffs incorporate by reference all preceding paragraphs.

83.    Plaintiff Carmen Nieves brings this claim individually and on behalf of the New York subclass.

84.    Plaintiff and the New York subclass members desired to purchase a toothpaste that could repair gums and "reverse" gingivitis, as indicated on the label.

85.    Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

86.    Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths, and/or actions.

87.    Plaintiff relied on the representations.

88.    Plaintiff and New York subclass members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## COUNT II

**Florida's Deceptive
and Unfair Trade Practices Act,
Fla. Stat. 501.201 *et seq.*
(Florida Consumer Protection Statute for Florida subclass)**

89.  Plaintiffs incorporate by reference all preceding paragraphs.

90.  Plaintiff Wendy Keirsted brings this claim individually and on behalf of the Florida subclass.

91.  Defendant violated and continues to violate Florida's Deceptive and Unfair Trade Practices Act by engaging in unfair methods of competition, unconscionable acts and practices, and unfair and deceptive acts and practices in the conduct of its business.

92.  The material misstatements and omissions alleged herein constitute deceptive and unfair trade practices in that they were intended to and did deceive Plaintiff and the general public into believing that Defendant's Product was effective.

93.  Plaintiff and Florida subclass members relied upon these advertisements in deciding to purchase the Product.   Plaintiff's reliance was reasonable because of Defendant's reputation as a reliable company.

94.  Had Plaintiff known that the Product was not as advertised, she would not have purchased it.

95.  As a result of Defendant's deceptive and unfair acts, Plaintiff and Florida subclass members have been damaged in the amount paid for the Product.

96.  Defendant's conduct offends established public policy, and is immoral, unethical, oppressive, and unscrupulous to consumers.

97.  Plaintiff and Florida subclass members are entitled to damages in an amount to be proven at trial.

98.     Defendant should also be ordered to cease its deceptive advertising and should be made to engage in a corrective advertising campaign to inform consumers that its Product is not of the quality advertised.

## COUNT III

### For False and Misleading Advertising,
### Fla. Stat. § 817.41
### (Florida Consumer Protection Statute for Florida subclass)

99.     Plaintiffs incorporate by reference all preceding paragraphs.

100.    Plaintiff Wendy Keirsted brings this claim individually and on behalf of the Florida subclass.

101.    On its website, in print advertisements, and in other forms of advertisements, Defendant made numerous misrepresentations of material fact regarding the quality of its Product.

102.    Defendant knew that these statements were false.

103.    Defendant intended for consumers to rely on its false statements for the purpose of selling its Product.

104.    Plaintiff and Florida subclass members did in fact rely upon these statements.  Reliance was reasonable and justified because of Defendant's reputation as a reliable company.

105.    As a result of Defendant's misrepresentations, Plaintiff and Florida subclass members suffered damages in the amount paid for Defendant's Product.

106.    Plaintiff and Florida subclass members are entitled to damages and injunctive relief as set forth above.

## COUNT IV

### Violation of Business & Professions Code §§ 17200, *et seq.*
### (California Consumer Protection Statute for California subclass)

107.    Plaintiffs incorporate by reference all preceding paragraphs.

13

108.   Plaintiff Liza Lichtinger brings this claim individually and on behalf of the California subclass.

109.   The Unfair Competition Law, Business & Professions Code §§ 17200, *et seq.* ("UCL"), prohibits any "unlawful," "unfair," or "fraudulent" business act or practice and any false or misleading advertising.

*110.*   **Unlawful Business Practices:** In the course of conducting business, Defendant committed "unlawful" business practices in violation of the UCL by, *inter alia*, making the gum repair and "reverse" gingivitis representations, which are false, misleading, and deceptive (which also constitutes advertising within the meaning of § 17200); violating the Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq.*; California's Sherman Food, Drug and Cosmetic Law, Health & Safety Code §§ 109875 *et seq.*; and the Food Drug and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.*

111.   Plaintiff and the California subclass reserve the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

112.   **Unfair Business Practices:** In the course of conducting business, Defendant committed "unfair" business acts and practices by, *inter alia*, making the gum repair and "reverse" gingivitis representations, which are false, misleading, and deceptive (which also constitutes advertising within the meaning of § 17200). There is no societal benefit from false advertising, only harm. While Plaintiff and the public at large were and continue to be harmed, Defendant has been unjustly enriched by its false, misleading, and deceptive representation as it unfairly enticed Plaintiff and California subclass members to purchase the Product instead of similar, less expensive toothpaste products without the gum repair

representation sold by other manufacturers. Because the utility of Defendant's conduct (zero) is outweighed by the gravity of harm to Plaintiff, consumers, and the competitive market, Defendant's conduct is "unfair."

113. Defendant also engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to the public at large.

114. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. For example, Defendant could have sold the Product without the gum repair representation.

115. **Fraudulent Business Practices:** In the course of conducting business, Defendant committed "fraudulent business act[s] or practices" and deceptive or misleading advertising by, *inter alia*, making the gum repair and "reverse" gingivitis representations, which are false, misleading, and deceptive to reasonable consumers.

*116.* Defendant's actions, claims, and misleading statements, as more fully set forth above, are misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code §§ 17200, *et seq.*

117. Plaintiff relied on Defendant's gum repair and "reverse" gingivitis representations and was in fact injured as a result of that false, misleading, and deceptive representation.

118. As alleged herein, Plaintiff and California subclass members have suffered injury in fact and lost money or property at the time of purchase as a result of Defendant's conduct because they were exposed to and purchased Defendant's Product in reliance on the gum repair and "reverse" gingivitis representations but did not receive a Product that can repair gums or "reverse" gingivitis.

119. Unless restrained and enjoined, Defendant will continue to engage in the above-described

conduct. Accordingly, injunctive relief is appropriate.

120.    Plaintiff and the California subclass members seek declaratory relief and an injunction prohibiting Defendant from continuing such practices, corrective advertising, restitution of all money obtained from Plaintiff and California subclass members collected as a result of unfair competition, and all other relief this Court deems appropriate, consistent with Business & Professions Code § 17203.

## COUNT V

### Violations of the Consumer Legal Remedies Act –
### Cal. Civ. Code §§ 1750, *et seq.*
### (California Consumer Protection Statute for California subclass)

121.    Plaintiffs incorporate by reference all preceding paragraphs.

122.    Plaintiff Liza Lichtinger brings this claim individually and on behalf of the California subclass pursuant to the Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq.* (the "CLRA").

123.    Plaintiff is a consumer as defined by California Civil Code § 1761(d).

124.    The Product is a "good" within the meaning of the CLRA.

125.    Defendant violated and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiff and California subclass members which were intended to result in, and did result in, the sale of the Product: (5) Representing that [the Product has] . . . characteristics, . . . uses [and] benefits . . . which [it does] not have . . . .(7) Representing that [the Product is] of a particular standard, quality, or grade … if [it is] of another.

126.    Pursuant to California Civil Code § 1782(d), Plaintiff and California subclass members seek a Court Order declaring Defendant to be in violation of the CLRA, enjoining the above-described wrongful acts and practices of Defendant, and ordering restitution and

disgorgement.

127.    Pursuant to § 1782 of the CLRA, Plaintiff notified Defendant in writing by certified mail

of the particular violations of § 1770 of the CLRA and demanded that Defendant rectify

the problems associated with the actions detailed above and give notice to all affected

consumers of Defendant's intent to so act. A copy of the letter is attached hereto as Exhibit

A.

128.    Defendant failed to rectify or agree to rectify the problems associated with the actions

detailed above and give notice to all affected consumers within 30 days of the date of

written notice pursuant to § 1782 of the CLRA.  Thus, Plaintiff further seeks actual,

punitive, and statutory damages as appropriate.

## COUNT V

### Breaches of Express Warranty,
### Implied Warranty of Merchantability and
### Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.
### (For all subclasses)

129.    Plaintiffs incorporate by reference all preceding paragraphs.

130.    The Product was manufactured, labeled, and sold by Defendant and expressly and

impliedly warranted to Plaintiff and class members that it could repair gums and "reverse"

gingivitis, as indicated on the label.

131.    Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing

of the Product.

132.    This duty is based on Defendant's outsized role in the market for this type of Product.

133.    Plaintiffs provided or will provide notice to Defendant, its agents, representatives, retailers,

and their employees.

134.    Defendant received notice and should have been aware of these issues due to complaints

by regulators, competitors, and consumers, made to Defendant's main offices.

135.   Specifically, another of Defendant's oral care brands was cited by regulators in the United

Kingdom for misleading claims related to these issues.

136.   The Product did not conform to its affirmations of fact and promises due to Defendant's

actions and was not merchantable because it was not fit to pass in the trade as advertised.

137.   Plaintiffs and class members would not have purchased the Product or paid as much if the

true facts had been known, suffering damages.

## COUNT VI

### Negligent Misrepresentation
### (For all subclasses)

138.   Plaintiffs incorporate by reference all preceding paragraphs.

139.   Defendant had a duty to truthfully represent the Product, which it breached.

140.   This duty is based on Defendant's position, holding itself out as having special knowledge

and experience this area.

141.   The representations took advantage of consumers' cognitive shortcuts made at the point-

of-sale and their trust in Defendant.

142.   Plaintiffs and class members reasonably and justifiably relied on these negligent

misrepresentations and omissions, which served to induce and did induce, their purchase

of the Product.

143.   Plaintiffs and class members would not have purchased the Product or paid as much if the

true facts had been known, suffering damages.

## COUNT VII

### Fraud
### (For all subclasses)

144.   Plaintiffs incorporate by reference all preceding paragraphs.

145.    Defendant misrepresented and/or omitted the attributes and qualities of the Product, that they could repair gums and "reverse" gingivitis, as indicated on the label

146.    Defendant knew, or should have known, that the claim to repair gums and "reverse" gingivitis was false, deceptive, and misleading.

147.    Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

**COUNT VIII**

**Unjust Enrichment**
**(For all subclasses)**

148.    Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

**JURY DEMAND AND PRAYER FOR RELIEF**

Plaintiffs demand a jury trial on all issues.

   **WHEREFORE**, Plaintiffs pray for judgment:

1.    Declaring this a proper class action, certifying Plaintiffs as subclass representatives and the undersigned as counsel for the subclasses;

2.    Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3.    Ordering injunctive relief to remove, correct, and/or refrain from the challenged practices and representations, and ordering restitution and disgorgement for members of the subclasses pursuant to the applicable laws;

4.    Awarding monetary damages, statutory damages pursuant to any statutory claims, and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for Plaintiffs' attorneys and

experts; and

6. Awarding other and further relief as the Court deems just and proper.

Dated:   September 1, 2021

Respectfully submitted,

*s/Patricia N. Syverson*
PATRICIA N. SYVERSON (*Admitted pro hac vice*)
BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
9655 Granite Ridge Drive, Suite 200
San Diego, California 92123
Telephone: (619) 798-4593
psyverson@bffb.com

ELAINE A. RYAN (*Admitted pro hac vice*)
CARRIE A. LALIBERTE (*Admitted pro hac vice*)
BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
2325 E. Camelback Rd., Suite 300
Phoenix AZ 85016
Telephone: (602) 274-1100
eryan@bffb.com
claliberte@bffb.com

SPENCER SHEEHAN
SHEEHAN & ASSOCIATES, P.C.
60 Cuttermill Rd., Ste. 409
Great Neck, NY  11021-3104
Telephone: (516) 268-7080
Fax: (516) 234-7800
spencer@spencersheehan.com

WILLIAM WRIGHT
THE WRIGHT LAW OFFICE, P.A.
FL BAR NO. 138861
515 N. Flagler Drive
Suite P-300
West Palm Beach, FL 33410
Telephone: (561) 514-0904
Facsimile: (561) 514-0905

willwright@wrightlawoffice.com

DANIEL FAHERTY
TELFER, FAHERTY, & ANDERSON, PL
FL BAR NO. 379697
815 S. Washington Avenue
Suite 201
Titusville, FL 32780
Telephone: (321) 269-6833
Facsimile: (321) 383-9970

Counsel for Plaintiffs and the
Putative Class

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 2, 2021, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system.  I certify that all participants and counsel of record in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated:  September 2, 2021

                    /s/ *Patricia N. Syverson*
                    Patricia N. Syverson