**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

CARMEN NIEVES, WENDY KEIRSTED,
and LIZA LICHTINGER, individually and
on behalf of all others similarly situated,

                                                 Case No:    7:21-cv-00186-CS

        Plaintiff,                                         7:21-cv-05648-CS

             v.                                         7:21-cv-05646-CS

THE PROCTER AND & GAMBLE
COMPANY,

        Defendant.

---

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT THE PROCTER & GAMBLE COMPANY'S <u>MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT</u>

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ............................................................................................................. 1

II.     SUMMARY OF ARGUMENT ....................................................................................... 3

III.    ARGUMENT ................................................................................................................... 5

     A.    Plaintiffs' Claims Must be Dismissed Because They are Negated by the Photographs of the Complete Labeling Attached to the Complaint and the P&G Articles Referenced in the Complaint. ................................................................... 6

     B.    Plaintiffs Have Failed to Plead a Violation of GBL §§ 349 & 350, FUDTPA, FAM, CLRA, or UCL as There is No Allegation of a Misrepresentation That Would Mislead a Reasonable Consumer .............................................................................. 8

     C.    Plaintiffs' Claim of Breaches of Express Warranty And Implied Warranty of Merchantability Fails As the Product Delivers On Its Promise to Repair Gums With Gingivitis .......................................................................................................... 12

     D.    The Magnuson-Moss Warranty Act Claims Fail because There is No Sufficient State-Law Warranty Claim Nor Have Plaintiffs Satisfied Its Jurisdictional Requirements .................................................................................................... 15

     E.    Plaintiffs' Claims for Both Negligent Misrepresentation and Fraud Must Fail ....... 17

     F.    Plaintiffs Have No Claim for Unjust Enrichment. .................................................. 20

IV.    CONCLUSION ............................................................................................................. 21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*2002 Lawrence R. Buchalter Alaska Tr. v. Philadelphia Fin. Life Assur. Co.*,
96 F. Supp. 3d 182 (S.D.N.Y. 2015) ........................................................................7

*Abraham v. Volkswagen of Am., Inc.*,
795 F.2d 238 (2d Cir. 1986) ..........................................................................15, 16

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*,
404 F.3d 566 (2d Cir. 2005) .....................................................................................6

*Am. Suzuki Motor Corp. v. Superior Ct.*,
44 Cal. Rptr. 2d 526 (Cal. Ct. App. 1995), *as modified on denial of reh'g*
(Sept. 21, 1995) .......................................................................................................14

*Aprigliano v. Am. Honda Motor Co.*,
979 F. Supp. 2d 1331 (S.D. Fla. 2013) .............................................................19, 20

*Aracena v. BMW of N. Am., LLC*,
159 A.D.3d 664, 71 N.Y.S.3d 614 (2018) ..............................................................14

*Argabright v. Rheem Mfg. Co.*,
201 F. Supp. 3d 578 (D.N.J. 2016) .........................................................................15

*Arthur Jaffee Assocs. v. Bilsco Auto Serv., Inc.*,
58 N.Y.2d 993, 448 N.E.2d 792 (1983) ..................................................................14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..................................................................................................5

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) ...................................................................................20

*Balaschak v. Royal Caribbean Cruises, Ltd.*,
No. 09-21196-CIV-ALTONAGA/Brown, 2009 U.S. Dist. LEXIS 126949
(S.D. Fla. Sept. 14, 2009) ..........................................................................................6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..................................................................................................5

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*,
448 F.3d 573 (2d Cir. 2006) ....................................................................................20

*Blair v. Wachovia Mortg. Corp.*,
  No. 5:11-cv566-Oc-37TBS, 2012 U.S. Dist. LEXIS 33941 (M.D. Fla. Mar.
  14, 2012) ...........................................................................................................................6

*Bocre Leasing Corp. v. Gen. Motors Corp. (Allison Gas Turbine Div.)*,
  84 N.Y.2d 685, 645 N.E.2d 1195 (1995).................................................................19

*Borchardt v. Mako Marine Int'l, Inc.*,
  No. 08-61199-CIV-MARRA, 2011 U.S. Dist. LEXIS 115867 (S.D. Fla. Oct.
  6, 2011) ...........................................................................................................................16

*Buckley v. Align Tech., Inc.*,
  5:13-CV-02812-EJD, 2014 WL 3778921 (N.D. Cal. July 31, 2014) ......................16

*Cali v. Chrysler Grp. LLC*,
  No. 10 Civ. 7606(JSR), 2011 WL 383952 (S.D.N.Y. Jan. 18, 2011)......................14

*Catalano v. BMW of North America, Inc.*,
  167 F. Supp. 3d 540 (S.D.N.Y. 2016)......................................................................14

*Chavis v. Fid. Warranty Servs., Inc.*,
  415 F. Supp. 2d 620 (D.S.C. 2006)..........................................................................16

*Corsello v. Verizon New York, Inc.*,
  18 N.Y.3d 777, 967 N.E.2d 1177 (2012)..................................................................20

*Crystal Springs Upland Sch. v. Fieldturf USA, Inc.*,
  219 F. Supp. 3d 962 (N.D. Cal. 2016) .....................................................................17

*Darisse v. Nest Labs, Inc.*,
  No. 5:14-cv-01363, 2016 WL 4385849 (N.D. Cal. Aug. 15, 2016)........................13

*David v. Am. Suzuki Motor Corp.*,
  629 F. Supp. 2d 1309 (S.D. Fla. 2009) ....................................................................21

*Davis v. Yeroushalmi*,
  985 F. Supp. 2d 349 (E.D.N.Y. 2013) ........................................................................6

*Enobakhare v. Carpoint, LLC*,
  08 CV 4798 ARR, 2011 WL 703920 (E.D.N.Y. Jan. 10, 2011) .............................16

*Feliciano v. Gen. Motors LLC*,
  No. 14 CIV. 06374 (AT), 2016 WL 9344120 (S.D.N.Y. Mar. 31, 2016) ...............15

*In re Ford Motor Co. Bronco II Products Liab. Litig.*,
  MDL-991, 1995 WL 491155 (E.D. La. 1995)..........................................................15

iii

*Garcia v. Kashi Co.*,
  43 F. Supp. 3d 1359 (S.D. Fla. 2014) ..................................................................15, 17, 18

*Global Tel\*Link Corp. v. Scott*,
  652 F. Supp. 2d 1240 (M.D. Fla. 2009)...............................................................................9

*Gristede's Foods, Inc. v. Unkechauge Nation*,
  532 F. Supp. 2d 439 (E.D.N.Y. 2007) ................................................................................9

*Harris v. Mills*,
  572 F.3d 66 (2d Cir. 2009)...................................................................................................5

*Hesse v. Godiva Chocolatier, Inc.*,
  463 F. Supp. 3d 453 (S.D.N.Y. 2020)...............................................................................13

*Jackson v. Eddy's LI RV Ctr., Inc.*,
  845 F. Supp. 2d 523 (E.D.N.Y. 2012) ..............................................................................14

*Jimenez v. Superior Ct.*,
  29 Cal. 4th 473, 58 P.3d 450 (2002) .................................................................................19

*Kais v. Mansiana Ocean Residences, LLC*,
  2009 WL 825763 (S.D. Fla. Mar. 26, 2009).............................................................4, 6, 8, 9

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) .............................................................................................6

*Koulkina v. City of New York*,
  559 F. Supp. 2d 300 (S.D.N.Y. 2008)................................................................................8

*L–7 Designs, Inc. v. Old Navy, LLC*,
  647 F.3d 419 (2d Cir. 2011)................................................................................................7

*Lexow & Jenkins, P.C. v. Hertz Commercial Leasing Corp.*,
  122 A.D.2d 25, 504 N.Y.S.2d 192 (N.Y. Sup. Ct. App. Div. 1986) ......................................13

*Lieb v. Am. Motors Corp.*,
  538 F. Supp. 127 (S.D.N.Y. 1982)....................................................................................16

*McKinniss v. Gen. Mills, Inc.*,
  No. CV 07-2521 GAF, 2007 WL 4762172 (C.D. Cal. Sept. 18, 2007)...................................8

*Nebraskaland, Inc. v. Sunoco, Inc.*,
  10-cv-1091, 2011 WL 6131313 (E.D.N.Y. July 13, 2011) ..................................................19

*Nelson v. MillerCoors, LLC*,
  246 F. Supp. 3d 666 (2017) ..............................................................................................17

iv

*Ofsowitz v. Georgie Boy Mfg., Inc.*,
    231 A.D.2d 858, 647 N.Y.S.2d 887 (1996) ............................................................19

*Orlando v. Novurania of Am., Inc.*,
    162 F. Supp. 2d 220 (S.D.N.Y. 2001) ..................................................................19

*Oscar v. BMW of N. Am.*, LLC,
    274 F.R.D. 498 (S.D.N.Y. 2011) ........................................................................15

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
    85 N.Y.2d 20 (1995) ............................................................................................9

*Padilla v. Porsche Cars North America, Inc.*,
    391 F. Supp. 3d 1108 (S.D. Fl. 2019) ................................................................14

*Pavletic v. Bertram Yacht, Inc.*,
    No. 11–60484–civ, 2011 WL 3475394 (S.D. Fla. Aug. 9, 2011) ..........................20

*Perret v. Wyndham Case Vacation Resorts, Inc.*,
    846 F. Supp. 2d 1327 (S.D. Fla. 2012) ................................................................6

*Petersen v. Allstate Indem. Co.*,
    281 F.R.D. 413 (C.D. Cal. 2012) ........................................................................18

*R.A. Jones & Sons, Inc. v. Holman*,
    470 So. 2d 60 (Fla. 3d DCA 1985) ....................................................................14

*Red v. Kraft Foods, Inc.*,
    No. CV 10-1028-GW, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012) ..........12

*Reed v. Pfizer, Inc.*,
    839 F. Supp. 2d 571 (E.D.N.Y. 2012) ................................................................13

*Robinson Helicopter Co. v. Dana Corp.*,
    34 Cal. 4th 979, 22 Cal. Rptr. 3d 352, 102 P.3d 268 (2004) ..............................20

*T.W.M. v. Am. Med. Sys., Inc.*,
    886 F. Supp. 842 (N.D. Fla. 1995) ....................................................................13

*Tomasino v. Estee Lauder Companies Inc.*,
    44 F. Supp. 3d 251 (2014) ..................................................................................9

*TufAmerica, Inc. v. Diamond*,
    968 F. Supp. 2d 588 (S.D.N.Y. 2013) ..................................................................8

*Wadlington v. Cont'l Med. Servs., Inc.*,
    907 So. 2d 631 (Fla. Dist. Ct. App. 2005) ..........................................................18

v

*Weiss v. Johansen*,
    898 So. 2d 1009 (Fla. Dist. Ct. App. 2005) .............................................................13

*Williamson v. Reinalt-Thomas Corp.*,
    No. 5:11–CV–03548–LHK, 2012 WL 1438812 (N.D. Cal. Apr. 25, 2012) ...........................9

*Zlotnick v. Premier Sales Grp., Inc.*,
    480 F.3d 1281 (11th Cir. 2007) ........................................................................8, 9

vi

## I.        INTRODUCTION

Plaintiffs have filed this meritless putative class action under the guise of consumer protection.  On its face and as a matter of law, Plaintiffs' Consolidated Class Action Complaint filed September 2, 2021 ("Complaint") fails to state any claim against P&G for which relief can be granted and should be dismissed with prejudice.  The crux of Plaintiffs' claim is that the Product – the Crest brand "Gum & Enamel Repair" toothpaste has an allegedly misleading label and therefore has less value than represented.  *See* Dkt. No. 28 ¶¶ 41–44.  Yet the plain labeling of the Product states that the Product is "Clinically Proven to help Reverse Gingivitis, Repairs Weakened Enamel."  Plaintiffs do not argue that the Product does not help reverse gums that are red, swollen, or even bleeding due to gingivitis because they can't.  Rather, in a strained effort to state a claim, Plaintiffs allege: "receding gums do not grow back; once the gum tissue has pulled back and away from the teeth, it's gone for good."  *Id.* ¶ 22.  And therefore, "[a]t every stage of periodontal disease, professional treatment is needed to repair gums."  *Id.* ¶ 24.

Plaintiffs' Complaint is filled with red herring allegations of periodontitis or "advanced" periodontal disease; however, nowhere on the Products' labels does P&G claim that the Products can treat or reverse periodontal disease.  Periodontitis is the inflammation of the peridontium (bone and connective tissue) not the gums.  Instead, the Crest Gum & Enamel Repair toothpaste, which Plaintiffs purchased, is very clear on its claims as under the brand name "Gum & Enamel Repair" the labels state "Clinically Proven to help Reverse Gingivitis, Repairs Weakened Enamel."  Complaint ¶ 27.  Yet, Plaintiffs appear to equate gingivitis and periodontitis despite the fact they are very different.  *See* Oral Health Care Drug Products for Over-the-Counter Human Use; Antigingivitis/Antiplaque Drug Products; Establishment of a Monograph, 68 Fed. Reg. 32232 (May 29, 2003) ("Most cases of periodontitis are believed to start with gingivitis, although not all

1

cases of gingivitis lead to periodontitis.").  Notwithstanding Plaintiffs' allegations to the contrary, P&G never once states that the Products will regrow or reattach gums.

Plaintiffs' states that "[i]n the gingivitis stage, the gums can become swollen and red, and they may bleed."  See Complaint ¶ 15.  In the prior paragraph Plaintiffs note that gingivitis is the early stage of periodontal disease and periodontitis is the advanced form of the disease.  *See id.* ¶ 14.  <u>Plaintiffs are therefore ignoring the simplest interpretation of the label, the Products aid in returning swollen, red, and bleeding gums to a healthy state</u>.  Plaintiffs do not allege that the Products do not do that.  Rather, Plaintiffs' Complaint admits that the Product can "control, reduce or prevent gingivitis."  *See* Complaint ¶ 27.  Therefore, there is no misrepresentation on the label that a reasonable consumer would rely upon to their detriment.

Furthermore, the Complaint contains several unsupported and unfounded allegations.  For example, Plaintiffs state, without citation: "As the ADA explains, the early-stage gingivitis reversal process involves "a professional cleaning" where the dentist uses a special tool to scrape the hardened calculus and plaque from along and beneath the gum line."  *See* Complaint ¶ 17.

The Complaint also states, without citation, that "[r]eversing gingivitis . . . requires a professional."  See Complaint ¶ 18.  However, none of the citations given in the Complaint support this allegation.  Furthermore, Plaintiffs also state, without citation, that P&G's website "explains that reversing gingivitis requires 'the help of your dentist. . . .'"  *See* Complaint ¶ 20.  Assuming the website they are referring to is What is Gingivitis? Symptoms, Causes, and Treatments, accessible at <u>https://crest.com/en-us/oral-health/conditions/gums/gingivitis-symptoms-causes-treatments</u>, that is not what the website states.  The website states: "Gingivitis occurs in 3 out of 4 of Americans during their lifetime, but with proper dental care early on, it's easily reversed."  See What is Gingivitis? Symptoms, Causes, and Treatments, accessible at https://crest.com/en-us/oral-

2

health/conditions/gums/gingivitis-symptoms-causes-treatments (last accessed November 12, 2021) (emphasis added).  Nowhere, as Plaintiffs allege, in that article does it state that gingivitis "requires 'the help of your dentist'. . . ."  *Id.*  Plaintiffs continuously mischaracterizes the language used in these websites to distract from the fact that the Products state only that it "Helps Reverse Gingivitis" and not that it reverses severe periodontitis.

Plaintiffs have brought this action as a purported class representatives for "three subclasses: New York, Florida, and California.  Class members will be all persons in New York, Florida, and California who, from the beginning of the applicable limitations period through the date of trial, purchased one or more of Defendant's Products for personal use and not for resale."  *See* Complaint ¶ 72.  In the Complaint, Plaintiffs seek recovery from P&G, who manufactures and sells the Product, on based upon claims of (i) violation of New York General Business Law ("GBL") §§ 349 & 350; (ii) violation Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. 501.201 et seq. ("FDUTPA"); (iii) For False and Misleading Advertising, Fla. Stat. § 817.41 ("FMA"); (iv) violation of Business & Professions Code §§ 17200, et seq. ("UCL"); (v) violation of the Consumer Legal Remedies Act – Cal. Civ. Code §§ 1750, et seq. ("CLRA"); (vi) Breaches of Express Warranty, Implied Warranty of Merchantability and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, et seq.; (vi) Negligent Misrepresentation; (vii) Fraud; and (viii) Unjust Enrichment.

## II.      SUMMARY OF ARGUMENT

**First**, Plaintiffs' Complaint must be dismissed because they are negated by the photographs of the complete labeling attached to the Complaint.  Contrary to the allegations in the Complaint, nowhere does the labeling claim the Products can repair damage done to gums by periodontal disease nor does it reference periodontal disease.  Because the label attached to the Complaint contradicts Plaintiffs' own allegations, the claims must fail.

3

**Second**, Plaintiffs' counts of violations of state consumer protection statutes – New York, Florida, and California – must be dismissed because Plaintiffs have failed to plead with the requisite "plausibility" that any of the defendants' claims were materially misleading.   Plaintiffs make numerous allegations related to whether the Products can repair gums suffering from "periodontitis (advanced disease)" even though the labels of the Products never make that promise. The Crest Toothpaste labels state that the Products can repair gums that have gingivitis (early stage periodontal disease).  A reasonable consumer would not rely upon language that does not appear on the label.

**Third**, Plaintiffs' FDUTPA, FMA, UCL, CLRA, negligent misrepresentation, and fraud[1] claims are subject to the more stringent pleading requirements of Rule 9(b) of the Federal Rule of Civil Procedure.  Because Plaintiffs have failed to plead a misrepresentation, they certainly have not pled with particularity that P&G has made a misrepresentation that they reasonably relied upon to their detriment.

**Fourth**, Plaintiffs' counts for breaches of express warranty and implied warranty of merchantability fail as the Product does "reverse gingivitis" as is explicitly stated on the label. Additionally, the breach of implied warranty count fails as Plaintiffs fails to allege privity and the Product may be used for its "ordinary purpose."

**Fifth**, the Magnuson-Moss Warranty Act must fail as there is no sufficient state-law warranty claim, nor have Plaintiffs satisfied its jurisdictional requirements.

---

[1] Plaintiffs do not specify under which state's or states' common law they are raising their negligent misrepresentation, fraud, express warranty, and implied warranty of merchantability counts.  For purposes of this motion to dismiss, P&G is seeking that these counts be dismissed under New York, California, and Florida common law since those are the classes that Plaintiff seek.

**Sixth**, the negligent misrepresentation and fraud counts must fail as Plaintiffs have not, and cannot, plead a misrepresentation.  The negligent misrepresentation claim must also fail due to the economic loss doctrine.

**Seventh**, Plaintiffs' unjust enrichment claim must be dismissed as it is premised on the same allegations as those set forth in support of Plaintiffs' other claims.  New York courts have ruled that plaintiffs cannot rely on the same conduct that is a basis for other claims to establish a separate claim for unjust enrichment.

Accordingly, Defendant's motion to dismiss should be granted in its entirety, and because Plaintiffs will be not be able to cure any deficiencies, Plaintiffs should also be denied leave to amend and the case should be dismissed with prejudice.

### III.    ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  As the Court noted in *Iqbal*, a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.*  Determining whether a complaint plausibly states a claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (finding that a court need not credit "legal conclusions" in a claim or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.").

Claims that are based in fraud, including Plaintiffs' FDUTPA, FMA, UCL, CLRA, negligent misrepresentation, and fraud counts, must meet the heightened pleading standard of Rule 9(b), which requires plaintiffs to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *Davis v. Yeroushalmi*, 985 F. Supp. 2d 349, 359 (E.D.N.Y. 2013) ("Furthermore, the plaintiff must also allege facts that give rise to a *strong* inference of fraudulent intent.") (emphasis in original); *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 583 (2d Cir. 2005) (holding that negligent misrepresentation claims "must be pled in accordance with the specificity criteria of Rule 9(b)"); *Blair v. Wachovia Mortg. Corp.*, No. 5:11-cv566-Oc-37TBS, 2012 U.S. Dist. LEXIS 33941, at *5 (M.D. Fla. Mar. 14, 2012) (Rule 9(b) applies "where the gravamen of [a FDUTPA] claim sounds in fraud"); *Perret v. Wyndham Case Vacation Resorts, Inc.*, 846 F. Supp. 2d 1327, 1333 (S.D. Fla. 2012) (finding that a FDUTPA claim alleging "purposeful[] and systematic[] affirmative misrepresentations" was "clearly based on fraud" and must be pled with particularity); *Balaschak v. Royal Caribbean Cruises, Ltd.*, No. 09-21196-CIV-ALTONAGA/Brown, 2009 U.S. Dist. LEXIS 126949, at *19 (S.D. Fla. Sept. 14, 2009) (holding that misleading advertising pursuant to Florida Statute § 817.41 is "a particularized form of fraud" under Florida law and therefore subject to Rule 9(b)); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) (finding that claims for CLRA and UCL that are grounded in fraud are subject to Rule 9(b)).

A.    <u>Plaintiffs' Claims Must be Dismissed Because They are Negated by the Photographs of the Complete Labeling Attached to the Complaint and the P&G Articles Referenced in the Complaint.</u>

All of Plaintiffs' claims are premised upon the allegations that the P&G Gum & Enamel Repair labeling is false or misleading. However, Plaintiffs have not identified any language on the Products' labels that is false or misleading or what specific aspect of the labeling they

justifiably relied on to their detriment.   Instead, Plaintiffs allege: "Although the word 'gum' does not directly precede 'repair,' its large typeface is similar to the word 'enamel,' and both words are modified by the word 'repair,' to which 'gum' is tethered by proximity, and conjoined by the word 'and' (or '&')."  Complaint ¶ 29.  Plaintiffs then allege the labeling on P&G's Crest Gum & Enamel Repair toothpaste is false and misleading because "[r]eceding gums do not grow back."  *Id.* ¶ 22.   Plaintiffs fail to properly acknowledge the full labeling which also states: "Clinically Proven to Help Reverse Gingivitis.  Repairs Weakened Enamel."  *Id.*¶ 27.

   Contrary to the allegations in the Complaint, nowhere does the labeling claim the P&G toothpaste can repair damage done to gums by periodontal disease. The labeling in question does not even reference periodontal disease.  Rather, the full label simply states that it can help reverse gingivitis, a condition which can cause redness of and swelling of the gums.  Plaintiffs' own Complaint admits that the Product can help "control, reduce or prevent gingivitis."  *See* Complaint ¶ 27.  It is axiomatic that if toothpaste helps reduce, prevent or control gingivitis, then it would help alleviate the redness and swelling of the gums associated with gingivitis.

   Thus, the photographs and references in the Complaint do not provide support for Plaintiffs' claims.  Rather, they negate Plaintiffs' claims.  Because attachments to the Complaint negate the allegations, Plaintiffs' Complaint fails as a matter of law and must be dismissed.  *See e.g.*, *2002 Lawrence R. Buchalter Alaska Tr. v. Philadelphia Fin. Life Assur. Co.*, 96 F. Supp. 3d 182, 199 (S.D.N.Y. 2015) ("where 'a plaintiff alleges a claim based on a written instrument,' if 'the documents contradict the allegations of a Plaintiffs' complaint, the documents control and the [c]ourt need not accept as true the allegations in the complaint.'"); *see also L–7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (holding that, for the purposes of deciding a motion to dismiss, courts take allegations as true "unless contradicted by ... documentary evidence

... from the exhibits attached" to the complaint); *TufAmerica, Inc. v. Diamond*, 968 F. Supp. 2d 588, 592 (S.D.N.Y. 2013) ("If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true." (internal quotation marks omitted)); *Koulkina v. City of New York*, 559 F. Supp. 2d 300, 329 (S.D.N.Y. 2008) ("The exhibits to the [a]mended [c]omplaint contradict the[ ] allegations [contained in the amended complaint].... [S]uch allegations cannot survive a motion to dismiss when they are contradicted by plaintiffs' own exhibits.").

B.    <u>Plaintiffs Have Failed to Plead a Violation of GBL §§ 349 & 350, FUDTPA,
FAM, CLRA, or UCL as There is No Allegation of a Misrepresentation That
Would Mislead a Reasonable Consumer</u>

Plaintiffs' counts involving state consumer protection statutes should be dismissed because Plaintiffs have failed to plead with the requisite "plausibility" that P&G's labeling is materially misleading because, as a matter of law, the statement "Gum & Enamel Repair" is not capable of misleading a reasonable consumer. *Pelayo*, 989 F. Supp. 2d at 978; accord *Leider v. Ralfe*, 387 F. Supp. 2d 283, 292 (S.D.N.Y. 2005) (where plaintiffs raised finding that the Court "can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging"). This is an "objective" standard whereby deceptive acts or practices are "limited to those likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,* 85 N.Y.2d 20, 26 (1995). Claims brought under the CLRA, UCL, and the FDUTPA are subject to the same objective standard. *See McKinniss v. Gen. Mills, Inc.*, No. CV 07-2521 GAF, 2007 WL 4762172, at *2 (C.D. Cal. Sept. 18, 2007); *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007).

"A plaintiff under section 349 must prove three elements: first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act[.]" *Tomasino v. Estee Lauder Companies Inc.*, 44 F. Supp. 3d 251 (2014) (citing *Stutman v. Chem. Bank*, 731 N.E.2d 608, 611 (2000)). In determining whether an act is misleading, the New York Court of Appeals, concerned about a "tidal wave of litigation that was not intended by the Legislature" under GBL § 349, adopted "an objective definition of deceptive acts and practices, whether representations or omissions, limited to those likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Local*, 85 N.Y.2d at 26. The Court further held that a determination as to whether this test is met can be made "as a matter of law." *Id.*

"A claim of false advertising under Section 350 must meet all of the same elements as a claim under Section 349, and the plaintiff must further demonstrate proof of actual reliance." *Id.*; *see also Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F. Supp. 2d 439, 451 (E.D.N.Y. 2007) ("[C]ourts have noted that the standards under both [S]ections [349 and 350] are substantively identical."). Claims under both Sections 349 and 350 must fail as a matter of law as Plaintiffs have not shown that any conduct by P&G would likely mislead a reasonable consumer acting reasonably under the circumstances. Similarly, FUDTPA, FAM, CLRA, and UCL claims all also require that the alleged misrepresentation likely mislead a reasonable consumer. *See Williamson v. Reinalt-Thomas Corp.,* 2012 WL 1438812, at *8 (N.D. Cal. Apr. 25, 2012) (UCL and CLRA); *Kais v. Mansiana Ocean Residences, LLC*, 2009 WL 825763, at *2 (S.D. Fla. Mar. 26, 2009) (FDUTPA); *Global Tel*Link Corp. v. Scott*, 652 F. Supp. 2d 1240, 1249 (M.D. Fla. 2009) (FDUTPA); *Zlotnick*, 480 F.3d at 1284 (This standard requires a showing of "probable, not possible, deception" to "a reasonable relying consumer.").

9

First and foremost, Plaintiffs never allege in the Complaint that P&G includes any promises on the labels of the Products to repair gums from severe periodontal disease or periodontitis.  In the photograph of the label Plaintiffs include at paragraph 27, the label clearly states directly under "Gum & Enamel Repair," "Clinically Proven to help Reverse Gingivitis.  Repairs Weakened Enamel."  *See* Complaint ¶ 27.  Plaintiffs do acknowledge that gingivitis is "an early form of gum disease" that can cause gums to become "swollen, red, and may bleed."  *See id.* ¶¶ 15, 27.  Plaintiffs never allege that the Products do not repair gums that have become inflamed or have started to bleed.  Instead, even though the labels of the Products never state anything about periodontal disease, Plaintiffs make several allegations about periodontal disease or receding gums.  *See* Complaint ¶¶ 8, 13, 14, 19, 20, 22-24, 31.

In addition to these unsupported allegations, Plaintiffs also focuses on their red herring—severe periodontal disease: "When gums recede, the roots of the teeth become exposed, making the teeth look longer…" and "Surgical options include cosmetic surgery, such as gum grafting." *See* Complaint ¶¶ 23, 26.  P&G never includes on its labeling that the Products will repair gums that have suffered from severe periodontal disease—only gingivitis.  *See id.* ¶ 27.  However, Plaintiffs choose to ignore that the Products do repair gums that have suffered from gingivitis, and instead alleges that the Products should be able to repair recessed gums that are suffering from periodontitis, which Plaintiffs state is an advanced periodontal disease.  *See generally, id.*, ¶¶ 14, 22.

Plaintiffs state that "[i]n the gingivitis stage, the gums can become swollen, red, and may bleed."  *See* Complaint ¶¶ 15.  Plaintiffs are therefore ignoring the simplest interpretation of the label, the Products aid in returning swollen, red, and bleeding gums to a healthy state.

10

Additionally, a reasonable consumer would not have made the leap in logic that Plaintiffs have done—that a product that states that it can repair gums that suffer from gingivitis can also repair gums that are suffering from the most advanced form of periodontal disease. And, because a reasonable consumer would not have made the same assumption, the claim should fail as a matter of law. In *Gomez-Jimenez v. N Y Law School*, the court was confronted with a claim that a law school's reporting of employment statistics for its graduates violated GBL § 349 because it included part-time and non-legal employment. 36 Misc. 3d 230, 943 N.Y.S.2d 834 (Sup. Ct. N.Y. Cnty.), *aff'd*, 103 A.D.3d 13, 956 N.Y.S.2d 54 (1st Dep't 2012). The court dismissed the claim noting that many law school graduates "toil ... in drudgery or have less than hugely successful careers" and that plaintiffs "as reasonable consumers of a legal education, would have to be wearing blinders not to be aware of these well-established facts of life in the world of legal employment." 36 Misc. 3d at 244. In affirming the dismissal of the complaint, the Appellate Division further observed that "a party does not violate GBL [§] 349 by simply publishing truthful information and allowing consumers to make their own assumptions about the nature of the information." *Id.* at 103 A.D. 3d at 17.

Additionally, the interpretation that Plaintiffs had—the product could repair gums that had been detached from the bone is not plausible. As Plaintiffs allege in their Complaint, "professional treatment is needed to repair gums," including non-surgical options including gingival veneers or surgical options including gum grafting. *See* Complaint ¶¶ 24–26. Additionally, Plaintiffs state that "[r]eceding gums do not grow back." *See* Complaint ¶ 22.

Courts, when using the "reasonable consumer" standard when evaluating claims of CLRA and UCL, have applied these principles to product labeling, holding that a reasonable consumer cannot "read a true statement on a package and [] then disregard 'well-known facts of life' and

assume things about the products other than what the statement actually says." *Red v. Kraft Foods, Inc.*, No. CV 10-1028-GW AGRX, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012).  In that case, the court rejected Plaintiffs' claim that the label on a package of crackers was misleading because it stated that the crackers were "made with real vegetables."  As the Court noted:

> Plaintiffs' theory of the case is that the packaging suggests the product is healthy and contains a significant amount of vegetables, because the packaging boasts that the crackers are made with real vegetables and depicts vegetables. The fact remains that the product is a box of crackers, and a reasonable consumer will be familiar with the fact of life that a cracker is not composed of primarily fresh vegetables.

> . . . it strains credulity to imagine that a reasonable consumer will be deceived into thinking a box of crackers is healthful or contains huge amounts of vegetables simply because there are pictures of vegetables and the true phrase "Made with Real Vegetables" on the box.

*Id.* at *10-12 (dismissing claims under California's consumer fraud statutes, which also require a plaintiff to prove deception of a "reasonable consumer") (citations omitted).

It is not reasonable for a consumer to believe that a toothpaste is promising to reattach or regrow gums—especially considering the label states only that the product "helps reverse gingivitis."  Plaintiffs' counts alleging a violation of GBL §349 and 350, CLRA, UCL, FUDTPA, and FMA must therefore fail.

C.      <u>Plaintiffs' Claim of Breaches of Express Warranty And Implied Warranty of Merchantability Fails As the Product Delivers On Its Promise to Repair Gums With Gingivitis.</u>

Plaintiffs have not made a single allegation that the Product does repair gums that are red, swollen, or bleeding as a result of suffering from gingivitis.  In order to plead this claim, Plaintiffs baselessly and without citation use an alleged statement by the ADA that "the early-stage gingivitis reversal process involves 'a professional cleaning.'"  Complaint ¶ 17.  A baseless statement is not sufficient in order to survive a motion to dismiss.  Because the Product does as it is intended and reverses the effects of gingivitis on gums, Plaintiffs' counts for breach of express warranty and

12

breach of implied warranty of merchantability must also fail.  *See Reed v. Pfizer, Inc.*, 839 F. Supp. 2d 571, 579 (E.D.N.Y. 2012) (dismissing a claim that a prescription medication caused Plaintiffs' injuries because "[Plaintiffs] have not alleged factual content sufficient for the Court to reasonably infer defendants breached any representation of fact or promise"); *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 470 (S.D.N.Y. 2020) ("Moreover, when an implied warranty of merchantability cause of action is based solely on whether the product in dispute conforms to the promises or affirmations of fact on the packaging of the product, the implied warranty of merchantability claim rises and falls with express warranty claims brought for the same product.").

1.    *Implied Warranty Also Fail As Plaintiffs Fail to Allege Privity.*

The implied warranty claims arising under New York and Florida law also fail because Plaintiffs fail to allege they were in privity with P&G. Under the laws of those states, "[i]t is settled that no implied warranty will extend from a manufacturer to a remote purchaser not in privity with the manufacturer where only economic loss and not personal injury is alleged." *Lexow & Jenkins, P.C. v. Hertz Commercial Leasing Corp.*, 122 A.D.2d 25, 26, 504 N.Y.S.2d 192 (N.Y. Sup. Ct. App. Div. 1986); *T.W.M. v. Am. Med. Sys., Inc.*, 886 F. Supp. 842, 844 (N.D. Fla. 1995); *Weiss v. Johansen*, 898 So. 2d 1009, 1011 (Fla. Dist. Ct. App. 2005) ("[I]n order to recover for the breach of a warranty either express or implied, the plaintiff must be in privity of contract with the defendant.") *see also Darisse v. Nest Labs, Inc.*, No. 5:14-cv-01363, 2016 WL 4385849 at *12 (N.D. Cal. Aug. 15, 2016) (noting Florida and New York, among other states, require privity for implied warranties of merchantability).

Here, Plaintiffs have not alleged facts showing they were in privity with P&G.  Although Plaintiffs do not state where they purchased the Products, they state that they purchased the Products at "retail stores," and they further state that "[t]he Product is sold at virtually every major

food, drug, and mass retail outlet in the country, including, but not limited to CVS, Costco, Target, Walgreens, and Walmart." Complaint ¶¶ 59, 62. Plaintiffs are therefore not in privity with P&G. *See, e.g.*, *Catalano v. BMW of North America, Inc.*, 167 F. Supp. 3d 540, 556 (S.D.N.Y. 2016); *Padilla v. Porsche Cars North America, Inc.*, 391 F. Supp. 3d 1108, 1116 (S.D. Fl. 2019).

Where privity is absent (as here), the courts of New York and Florida do not recognize any implied warranties. *See, e.g.*, *Arthur Jaffee Assocs. v. Bilsco Auto Serv., Inc.*, 58 N.Y.2d 993, 995, 448 N.E.2d 792, 792 (1983) ("there being no privity between the purchaser and the defendant there can be no implied warranty"); *Aracena v. BMW of N. Am., LLC*, 159 A.D.3d 664, 665-66, 71 N.Y.S.3d 614 (2018) (same); *Cali v. Chrysler Grp. LLC*, No. 10 Civ. 7606(JSR), 2011 WL 383952, at *3 (S.D.N.Y. Jan. 18, 2011) (same). The implied warranty claim, therefore, fails as a matter of law and should be dismissed.

### 2. The Product Could Be Used For the "Ordinary Purpose" Defeating Implied Warranty Count

The implied warranty claims also fails under New York law because the Product is usable for its "ordinary purpose," and New York courts do not recognize a breach of implied warranty in those circumstances. The implied warranty of merchantability guarantees only that goods are "(1) fit for the ordinary purpose for which they are used; (2) capable of passing without objection in the trade under the contract description; and (3) of fair and average quality for such goods." *Jackson v. Eddy's LI RV Ctr., Inc.*, 845 F. Supp. 2d 523, 530-31 (E.D.N.Y. 2012) (citing N.Y.U.C.C. § 2-314(1)); *see also* Fla. Stat. § 672.314(2)(c); *R.A. Jones & Sons, Inc. v. Holman*, 470 So. 2d 60, 64 (Fla. 3d DCA 1985) (In order for goods to be merchantable, the goods must be "fit for the ordinary purposes for which such goods are used," among other requirements.); *Am. Suzuki Motor Corp. v. Superior Ct.*, 44 Cal. Rptr. 2d 526, 529 (Cal. Ct. App. 1995), *as modified on denial of reh'g* (Sept. 21, 1995) ("the implied warranty of merchantability can be breached only

14

if the [product is] render[ed] … unfit for its ordinary purpose.").  Plaintiffs do not allege that the Product is not fit to be used as toothpaste – there is no allegation that the Product does not clean teeth nor do they allege that the Product improves redness and swelling of the gums as caused by gingivitis.  Therefore, these allegations cannot make out a claim for a breach of implied warranty.

> D.   The Magnuson-Moss Warranty Act Claims Fail because There is No Sufficient State-Law Warranty Claim Nor Have Plaintiffs Satisfied Its Jurisdictional Requirements

First, Plaintiffs cannot bring a MMWA claim unless they can maintain a state-law warranty claim.  "[I]f there exists no actionable warranty claim, there can be no violation of the MMWA." *Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578, 600 (D.N.J. 2016); *see also Garcia*, 127 F. Supp. 3d at 232; *Oscar v. BMW of N. Am.*, LLC, 274 F.R.D. 498, 509 (S.D.N.Y. 2011); *Feliciano v. Gen. Motors LLC*, No. 14 CIV. 06374 (AT), 2016 WL 9344120, at *8 (S.D.N.Y. Mar. 31, 2016) ("'To state a claim under the MMWA, plaintiffs must adequately plead a cause of action for breach of written or implied warranty….").  Because Plaintiffs have failed to state a claim for breach of express or implied warranty under state law, their MMWA claim must be dismissed.

Second, in order to state a claim under the Magnuson–Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 et seq., a plaintiff must show, inter alia that the amount in controversy of any individual claim is at least $25. 15 U.S.C. § 2310(d)(3)(A).  If the action is brought as a class action, it must be brought by at least 100 named plaintiffs. 15 U.S.C. § 2310 (d)(3)(C); *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 241 (2d Cir. 1986).  Courts have interpreted these requirements "strictly in light of the Magnuson–Moss Act's stated purpose of encouraging informal resolution of consumer warranty claims" and of channeling most litigation under the Magnuson–Moss Act into state courts.  *In re Ford Motor Co. Bronco II Products Liab. Litig.*,

MDL-991, 1995 WL 491155 (E.D. La. 1995) (dismissing MMWA claim where complaint only identified ten named plaintiffs).

The Complaint only identifies three plaintiffs, Ms. Nieves, Ms. Keirsted, and Ms. Lichtinger; as such, Plaintiffs have failed to adequately plead their MMWA claim. *See Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 245 (2d Cir. 1986); *Chavis v. Fid. Warranty Servs., Inc.*, 415 F. Supp. 2d 620, 622–23 (D.S.C. 2006) (dismissing MMWA case under this rule); *Lieb v. Am. Motors Corp.*, 538 F. Supp. 127, 135 (S.D.N.Y. 1982) (dismissing class-action MMWA claim because only one plaintiff was named in the complaint); *Buckley v. Align Tech., Inc.*, 5:13-CV-02812-EJD, 2014 WL 3778921, at *3 (N.D. Cal. July 31, 2014) (same); *Borchardt v. Mako Marine Int'l, Inc.*, No. 08-61199-CIV-MARRA, 2011 U.S. Dist. LEXIS 115867, at *6 (S.D. Fla. Oct. 6, 2011).

The Complaint is also deficient in that it does not allege that the amount in controversy of any individual claim is at least $25. 15 U.S.C. § 2310(d)(3)(A). In determining the amount in controversy, courts are to "look no farther than the pleadings," and "[i]f it appears to a legal certainty that the claim cannot meet the statutory threshold [of the MMWA], the suit should be dismissed for lack of jurisdiction." *Enobakhare v. Carpoint, LLC*, 08 CV 4798 ARR, 2011 WL 703920 at *10 (E.D.N.Y. Jan. 10, 2011).  To calculate the amount in controversy, courts look at the purchase price of the product at issue, the present value of the product, and the value that plaintiffs received from the product. *Id.*

Here, Plaintiffs admit that their individual claims fall far short of the $25 requirement, as they allegedly paid between $6.99 and $9.29 for the Product and allege no other damage aside from the cost of the allegedly misleading. Compl. at ¶¶ 43, 44.  As such, their MMWA claim must be dismissed.

16

E.      Plaintiffs' Claims for Both Negligent Misrepresentation and Fraud Must Fail

        *1.     Plaintiffs Have Not Sufficiently Pled a Misrepresentation*

Plaintiffs' negligent misrepresentation and fraud claims must fail because there is no misrepresentation. Negligent misrepresentation and fraud both require Plaintiffs to plead the existence of some misrepresentation. Specifically, to assert a claim for negligent misrepresentation under New York law, a plaintiff must plead facts showing (1) the defendant owed plaintiff "a duty of care due to a 'special relationship;'" (2) the defendant "knew or should have known that [its] representations were false"; (3) the defendant "knew or should have known that the [plaintiff] would rely on those misrepresentations"; and (4) the plaintiff "in fact relied on those misrepresentations to [his] detriment." *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666 (2017) (citing *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000).) Plaintiffs are required to pled similar allegations in order for negligent misrepresentations under Florida or California law to survive as well. *See Crystal Springs Upland Sch. v. Fieldturf USA, Inc.*, 219 F. Supp. 3d 962, 969 (N.D. Cal. 2016) ("To state a claim for negligent misrepresentation under California law, a plaintiff must allege: (1) the misrepresentation of a past or existing material fact; (2) without reasonable ground for believing it to be true; (3) with intent to induce another's reliance on the fact misrepresented; (4) justifiable reliance on the misrepresentation; and (5) resulting damage."); *Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359, 1386 (S.D. Fla. 2014) ("To state a cause of action for negligent misrepresentation in Florida, a plaintiff must allege: '(1) the defendant made a misrepresentation of material fact that he believed to be true but which was in fact false; (2) the defendant was negligent in making the statement because he should have known the representation was false; (3) the defendant intended to induce the plaintiff to rely ... on the misrepresentation; and (4) injury resulted to the plaintiff acting in justifiable reliance upon the misrepresentation.'")

To state a claim for fraud under New York law, a plaintiff must allege facts showing "(1) a misrepresentation or a material omission of fact which was false and known to be false by defendant, (2) made for the purpose of inducing the other party to rely upon it, (3) justifiable reliance of the other party on the misrepresentation or material omission, and (4) injury." *Id.* (citing *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009)).[2]   Any claim for fraud under California or Florida law similarly requires an intentional misrepresentation that the Plaintiffs justifiably relied upon.  *See Petersen v. Allstate Indem. Co.*, 281 F.R.D. 413, 417 (C.D. Cal. 2012) ("[W]hile negligent misrepresentation shares four elements with fraud, it differs regarding the fifth element: mental state."); *Wadlington v. Cont'l Med. Servs., Inc.*, 907 So. 2d 631, 632 (Fla. Dist. Ct. App. 2005) (citing *Cohen v. Kravit Estate Buyers, Inc.*, 843 So. 2d 989, 991 (Fla. Dist. Ct. App. 2003)) ("The four essential elements of fraud under Florida law are: '(1) a false statement concerning a specific material fact; (2) the maker's knowledge that the representation is false; (3) an intention that the representation induces another's reliance; and (4) consequent injury by the other party acting in reliance on the representation.'")

Because both claims sound in fraud, Plaintiffs must also meet the higher pleading requirements of Federal Rule of Civil Procedure 9(b) in order to survive dismissal.  Plaintiffs certainly fails to meet this burden because, as argued above, they have not shown that P&G made any misrepresentation on the Product's label or elsewhere.  Plaintiffs does not plead, to any level of particularity, that P&G includes any statements on the label that the products will "regrow gums" or repair damage caused by periodontitis.  And since there are no statements on the Product's label stating that it will regrow gums or repair damage caused by periodontitis, then Plaintiffs have failed to plead that they reasonably relied on any such statements.  Because this is

---

[2] Plaintiffs have not stated which

clear from the face of the label, as discussed in more detail in Section II.B. above, Plaintiffs have not, and cannot plead that a reasonable consumer could rely on the statement the negligent misrepresentation and fraud claims under New York, California, and/or Florida law must also fail.

2. *Plaintiffs' Negligent Misrepresentation and Fraud Counts Must Also Fail Due to Economic Loss Doctrine*

Plaintiffs' negligent misrepresentation and fraud counts are also barred pursuant to the economic loss doctrine. The economic loss doctrine provides that claims for product-related economic damages (that is, claims not based on allegations that someone has actually sustained personal injury or damage to property) must be adjudicated exclusively on the basis of the terms of any applicable contract and warranties and not on the basis of any alternative tort-based theories. *See, e.g.*, *Bocre Leasing Corp. v. Gen. Motors Corp. (Allison Gas Turbine Div.)*, 84 N.Y.2d 685, 689, 645 N.E.2d 1195 (1995) (product owner may not recover in tort under strict liability theory for damage to product itself); *Jimenez v. Superior Ct.*, 29 Cal. 4th 473, 481-485, 58 P.3d 450 (2002); *Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331, 1337–38 (S.D. Fla. 2013). The doctrine applies to consumer transactions. *Ofsowitz v. Georgie Boy Mfg., Inc.*, 231 A.D.2d 858, 859, 647 N.Y.S.2d 887 (1996*)* ("We reject plaintiff's contentions that we should not apply [the economic loss] principle to consumer purchases.")

Accordingly, courts have routinely dismissed fraud-based causes of action under the economic loss rule where the plaintiff fails to allege bodily injury and the alleged misrepresentations and/or omissions relate to the quality, characteristics and performance of the product forming the subject matter of the claim. *See, e.g.*, *Orlando v. Novurania of Am., Inc.*, 162 F. Supp. 2d 220, 225-26 (S.D.N.Y. 2001) (dismissing fraudulent misrepresentation claim against manufacturer because it "is barred by New York's economic loss rule"); *Nebraskaland, Inc. v. Sunoco, Inc.*, 10-cv-1091, 2011 WL 6131313, at *6 (E.D.N.Y. July 13, 2011) (dismissing negligent

19

misrepresentation claim under economic loss doctrine); *Aprigliano*, 979 F. Supp. 2d at 1337–38.

("claims for negligent misrepresentation are barred by the economic loss rule where, as here, there

are claims for breach of warranty alongside tort claims and the allegations contained in both are

similar"); *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988, 22 Cal. Rptr. 3d 352, 102

P.3d 268 (2004) ("The economic loss rule … 'prevents the law of contract and the law of tort from

dissolving one into the other.'); *see also Pavletic v. Bertram Yacht, Inc.*, No. 11–60484–civ, 2011

WL 3475394, at *6 (S.D. Fla. Aug. 9, 2011) ("Given the similarities between the alleged

obligations under the warranty and the acts that [p]laintiff identifies as constituting negligent

misrepresentation and fraud in the inducement, these claims, as pled, are barred under Florida

law.").

Here, the sole harm Plaintiffs have alleged for their negligent misrepresentation and fraud

claims is the economic loss they suffered by purchasing purportedly misleading products.  Compl.

at ¶¶ 42-44. As such, the economic loss doctrine bars these claims.

F.   Plaintiffs Have No Claim for Unjust Enrichment.

In California, there is not a standalone cause of action for "unjust enrichment." *Astiana v.

Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015).  Plaintiffs' unjust enrichment claim

must be dismissed under New York and Florida law as duplicative because it is premised on the

same allegations as those set forth in support of Plaintiffs' other claims. "To prevail on a claim for

unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at

the Plaintiffs' expense; and (3) that equity and good conscience require restitution." *Beth Israel

Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir.

2006).  However, New York law does not allow claims for unjust enrichment to serve as "catchall

cause[s] of action to be used when others fail." *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d

777, 790, 967 N.E.2d 1177, 1185 (2012).  *See also David v. Am. Suzuki Motor Corp.*, 629 F. Supp.

2d 1309, 1324 (S.D. Fla. 2009), (dismissing unjust enrichment claim because "the damages pled

under unjust enrichment are not distinct from those pled under express warranty").

The section of the Complaint dealing with unjust enrichment has only one "substantive"

paragraph.  Complaint ¶ 70.  This paragraph does not include any specific allegations of unjust

enrichment.  *Id.*  The paragraph certainly does not contain any allegations beyond those that are

the crux of the remaining counts in the Complaint.  Because Plaintiffs' unjust enrichment claim is

duplicative of the other seven claims, this claim must fail as well.

## IV.   CONCLUSION

For these reasons, P&G prays that this Court dismiss with prejudice the entire Complaint.

P&G prays for such other relief as to which it is entitled.

Dated: November 12, 2021                              Respectfully submitted,


                                                      */s/  John P. Hooper*
                                                      John P. Hooper
                                                      Eric F. Gladbach
                                                      Jessica K. Shook
                                                      King & Spalding, LLP
                                                      1185 Avenue of the Americas, 34th
                                                      Floor
                                                      New York, NY 10036-2601
                                                      Phone: (212) 556-2220
                                                      Fax: (212) 556-2222
                                                      jhooper@kslaw.com
                                                      egladbach@kslaw.com
                                                      jshook@kslaw.com


                                                      ***ATTORNEY FOR DEFENDANT
                                                      THE PROCTER & GAMBLE
                                                      COMPANY***

WORKAMER\26777\145006\38788867.v2-7/27/21

## <u>CERTIFICATE OF SERVICE</u>

I certify that on November 12, 2021, a copy of the Procter & Gamble Company's Notice of Motion to Dismiss the Consolidated Class Action Complaint and the Memorandum of Law in Support of the Motion to Dismiss the Consolidated Class Action Complaint was served upon all counsel of record via e-email and overnight delivery via UPS. Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system upon service of the Reply in Support of the Motion to Dismiss. Parties may access this filing through the Court's system at that time.

<u>/s/ *Jason Bush*     </u>
Jason Bush